IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

RAMSEY HILL EXPLORATION, LLC,

                              Plaintiff,                    OPINION AND ORDER

        v.                                                 19-cv-082-wmc

JGS ALL AMERICAN CONSTRUCTION, LLC,
RAIL TRUSTS EQUIPMENT, INC., and GRANT
GIBBS,

                              Defendants.

In its amended complaint, plaintiff Ramsey Hill Exploration, Inc., asserts breach of contract and unjust enrichment claims arising out of its agreement to supply frac sand to defendant JGS All American Construction, LLC, as well as tortious interference with a contract and theft/conversion claims against defendants Grant Gibbs and Rail Trusts Equipment, Inc. Before the court are defendants Gibbs and Rail Trusts' motions to dismiss under Federal Rules of Civil Procedure 12(b)(6) and to strike under Rule 12(f). (Dkt. ##12, 13.) For the reasons that follow, the court will grant in part and deny in part defendants' motions and direct plaintiff to file a second amended complaint consistent with this order.

ALLEGATIONS OF FACTS[1]

In July 2018, Ramsey Hill and JGS entered into a Sand Supply Agreement, which is attached as Exhibit A to the amended complaint. (Agreement (dkt. #8-3).) On or about

---

[1] For purposes of defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court "accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of" plaintiff. *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) (internal citation omitted).

August 13, 2018, Ramsey Hill delivered the first load of frac sand to the designated delivery point and loaded it into rail cars as required under the Agreement. However, the Agreement also provides that only "[a]fter the invoice is paid, [does Ramsey Hill] agree[] to release the sand in the loaded railcars." (Agreement (dkt. #8-3) ¶ 7(a).) "Despite this express provision . . . Grant Gibbs either individually or as a representative of . . . JGS, Rail Trust[s] or another entity contacted Progressive Rail and demanded that shipment be released . . . in direct violation of the [Agreement]." (Am. Compl. (dkt. #8) ¶ 13.) Plaintiff further claims that its invoice on the first load remains unpaid, as does the invoice on a second load of frac sand sent to the delivery point on October 9, 2018.

OPINION[2]

In sorting through the motions before the court, both parties share blame. Indeed, plaintiff's amended complaint and defendants' motions to dismiss highlight two common flaws in litigation: (1) sloppy pleading on the part of a plaintiff who asserts claims against "defendants" collectively without differentiating which claims actually apply to the individual defendants; and (2) overzealous motions to dismiss by defendants, who unreasonably demand more detailed factual allegations in the face of adequate notice

---

[2] The court exercises subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a). Plaintiff Ramsey Hill Exploration, LLC, is a citizen of Wisconsin in light of plaintiffs' representation that its two members are both citizens of Wisconsin. (Corporate Disclosure Statement (dkt. #10) ¶¶ 1.b, 1.c.) Defendant JGS All American Construction, LLC's sole member is a citizen of Texas. (Not. of Removal (dkt. #2) ¶ 27.) Rail Trusts Equipment, Inc., is incorporated in Florida with its principal place of business also in Florida. (*Id.* at ¶ 24.) Defendant Gibbs is also a citizen of Florida. (*Id.* at ¶ 25.) Thus, there is complete diversity of citizenship between plaintiff and defendant. Moreover, plaintiff seeks payment of at least $256,881.24, satisfying the amount in controversy requirement. (*Id.* at ¶ 30; Am. Compl., Exs. B, C (dkt. ##8-4, 8-5).)

pleading and reasonable supportive inferences.

To comply with Rule 8, "a plaintiff has the obligation to provide the factual 'grounds' of [her] entitlement to relief (more than 'mere labels and conclusions'), and a 'formulaic recitation of a cause of action's elements will not do,'" *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 547 (2007)), but a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Keeping this standard in mind, the court will address defendants' asserted grounds to dismiss in turn.

## I. Tortious Interference Claim

Defendants first argue that plaintiff's allegations fail to state a claim for tortious interference of a contract. Specifically, defendants fault plaintiff for failing to allege: "(a) that Progressive Rail 'released' the shipment as a result of Mr. Gibbs' purported demand, or (b) that JGS's refusal to pay for the sand was caused by Mr. Gibbs' purported demand on Progressive Rail." (Def.'s Mot. (dkt. #13) ¶ 24.[3]) As for Rail Trusts, defendants further argue that the complaint contains no factual allegations "regarding Rail Trusts' direct interaction with JGS that caused JGS to refuse to pay for the two separate sand deliveries made by Ram[s]ey Hill almost two months apart." (*Id.* at ¶ 27.)

To prove intentional interference with an existing or prospective contract under

---

[3] Defendants Gibbs and Rail Trusts filed separate motions, but the arguments are essentially the same, although with one nuance as addressed above. As such, the court addresses them together, opting only to cite to Rail Trusts' motion for both.

Wisconsin law, a party must demonstrate that: "(1) the plaintiff had a contract or prospective contractual relationship with a third party; (2) the defendant interfered with the relationship; (3) the interference was intentional; (4) a causal connection exists between the interference and the damages; and (5) the defendant was not justified or privileged to interfere." *Burbank Grease Servs., LLC v. Sokolowski*, 2006 WI 103, ¶ 44, 294 Wis. 2d 274, 717 N.W.2d 781. Here, plaintiff's allegations that Gibbs "contacted Progressive Rail and demanded that shipment be released" raises a reasonable inference that Progressive Rail, which the court will presume for pleading purposes shipped plaintiff's sand to the delivery point, then released the shipment. If so, then Gibbs' interference caused the shipment to be released before payment of the invoice in violation of that Agreement's requirement, thus satisfying the causal connection requirement for purposes of pleading.

As noted, defendants separately argue a lack of specific allegations disclosing defendant Rail Trusts' role in any tortious interference, an argument that has more traction and highlights the larger problem with plaintiff's pleading. Plaintiff alleges that "Gibbs, either individually or as a representative of Defendants JGS, Rail Trust[s] or another entity, contacted Progressive Rail." (Am. Compl. (dkt. #8) ¶ 13.) If Gibbs was acting on his own behalf, then plaintiff may only pursue a claim against Gibbs, not Rail Trusts, and if he was acting as a representative of JGS -- the party with whom plaintiff has entered into a contract -- then as a matter of law, plaintiff *cannot* assert a tortious interference claim at all. *See Joseph P. Caulfield & Assocs., Inc. v. Litho Prods., Inc.*, 155 F.3d 883, 889 (7th Cir. 1998) (under Wisconsin law, "a party cannot interfere tortiously with its own contract" (citing

*Wausau Medical Ctr. v. Asplund*, 182 Wis. 2d 274, 514 N.W.2d 34, 44 (1994))). On the other hand, if Gibbs was acting as a representative of Rail Trusts, then perhaps both Gibbs and Rail Trusts could be liable for tortious interference with JGS's Agreement with Ramsey Hill.[4]

Because of the uncertainty on whose behalf Gibbs is alleged to have acted as currently pleaded, the court will grant defendants' motions to dismiss Count IV, while at the same time granting leave to plaintiff for the purpose of repleading its basis for asserting tortious interference claims against defendants Gibbs, Rail Trusts or both on or before Monday, July 15th.[5]

One final note: plaintiff's amended complaint only contains factual allegations sufficient to state a tortious interference claim with respect to the August 13, 2018, shipment. If plaintiff intended for this claim to cover the October 9, 2018, shipment as well, then it must also include specific factual allegations tying defendants Gibbs, Rail Trusts or both to JGS's alleged failure to pay that invoice.[6]

---

[4] Of course, there is at least one other possibility: Gibbs was acting as a representative of some other party, in which case Rail Trust would likely again not be liable for tortious interference.

[5] Should plaintiff choose to timely replead, the defendants may have until the current Summary Judgment deadline to answer, move or otherwise respond to that claim.

[6] Defendants further complained that plaintiff "improperly commingles multiple claims against multiple Defendants in a single count." (Defs.' Mot. (dkt. #13) ¶ 44.) While the court is not aware of a prohibition for bringing a claim against multiple defendants in a single count -- and defendants cite no support for this proposition -- the court agrees that plaintiff's repeated use of plural "defendants" is confusing. In crafting its second amended complaint, plaintiff should use greater care in identifying the specific defendant or defendants that are implicated with respect to each cause of action.

## II. Theft/Conversion

Defendants next seek to dismiss plaintiff's theft/conversion claim on the basis that the plain language of the Agreement forecloses such a claim. Specifically, under ¶ 4 of the Agreement, "[t]itle to and risk of loss of Sand sold under this Agreement shall pass to Customer [JGS] upon delivery FOB the Delivery Point." (Agreement (dkt. #8-3) ¶ 4.) Relying on plaintiff's allegations that it delivered the first load of sand on August 13, 2018, to the delivery point and that it delivered the second load of sand on October 9, 2018, also to the delivery point, defendants argue that Ramsey Hill no longer had title to the sand at that point, and, therefore its claim that defendants Gibbs and Rail Trusts converted the sand at the delivery point fails as a matter of law. Particularly at the pleading stage, this argument is too clever by half.

Drawing all reasonable inferences in plaintiff's favor, as the court must, the allegations permit a finding that defendants Gibbs and Rail Trusts took unauthorized *control* of the frac sand shipment (at least with respect to the August 13, 2018, delivery) by demanding that the third-party shipper release the rail cars holding the sand regardless of whether formal title had passed to JGS or not, since the sand could not be released until after the invoice was paid. Accordingly, the court will deny this part of the motions.[7]

## III. Attorney's Fees Demand

Since neither were parties to the Agreement, defendants Gibbs and Rail Trusts also seek dismissal of plaintiff's demand for attorneys' fees as directed to them. In its request

---

[7] In their motions, defendants also point out that there is no common law claim for "theft." Fair enough, but there is a statutory civil theft claim under Wis. Stat. § 895.446.

for relief, plaintiff's amended complaint seeks "an award of attorneys fees, costs, and other expenses incurred by Plaintiff in pursuit of the Defendants as specifically allowed under Paragraph 17 of the Contract." (*Id.* at p.5, ¶ B.) These two defendants correctly point out that if the basis for an award of fees and costs is limited to that contract, then there is no basis to award fees and costs against them.

Plaintiff offers no basis to disagree, so the court will grant defendants' motions to dismiss any fee award arising under contract or quasi-contract claim without prejudice to plaintiff seeking consequential damages under a tort or quasi-tort claim, including fees.[8]

## IV. Premature Claims

Defendants also seek dismissal of all counts on the basis that the claims are premature. In support, defendants point to ¶ 7(c) of the Agreement, which provides in pertinent part:

> In the event Customer [JGS] disputes any invoice, in whole or in part, Customer shall pay the undisputed portion of such invoice within the applicable payment period, but Customer may withhold payment of the disputed amount or Customer may pay the disputed amount without waiver of any of its rights, including the right to seek reimbursement. Customer shall pay any disputed invoices within seven (7) business days of the resolution of the dispute.

(Agreement (dkt. #8-3) ¶ 7(c).) Relying on this language, defendants argue that with their

---

[8] As plaintiff points out in its opposition brief, defendants' contrary claim to recover fees "if it is determined that [they] had any obligations arising pursuant to the Sand Agreement" makes no sense. (Pl.'s Opp'n (dkt. #16) 7 (quoting Def.'s Mot. to Dismiss (dkt. #13) ¶ 98).) Having argued in their first motion to dismiss that neither Rail Trusts or Gibbs are parties to the Sand Agreement -- and having argued in the present motion that plaintiff cannot seek fees against them on the basis of a breach of the Sand Agreement -- these defendants are similarly foreclosed from relying on the fee-shifting provision in that contract to seek fees.

dispute unresolved, JGS has no obligation to pay, thus not only thwarting plaintiff's claims against JGS but also the non-contracting parties.

This argument is too frivolous to warrant much discussion. Plaintiff alleges that JGS accepted delivery of two loads of frac sand without remitting payment. The failure to pay is ripe for resolution whether or not JGS is in breach of a current duty to pay in part or in whole. Thus, there is nothing premature about the lawsuit. Moreover, the notion that "a dispute" could somehow relieve either party from fulfilling their contractual duties with impunity, without regard to the relative merits of that dispute flies in the face of the duty of good faith and fair dealing recognized in any Wisconsin contract. *Tilstra v. Bou-Matic, LLC*, 1 F. Supp. 3d 900, 910 (W.D. Wis. 2014) ("Wisconsin law recognizes that every contract imposes an obligation of good faith in its performance.").

## V. Motion to Strike Paragraph 23

Finally, in addition to moving to dismiss, defendants seek to strike a paragraph in the amended complaint on the basis that it is "scandalous." Rule 12(f) of the Federal Rules of Civil Procedure permits a court to strike from pleadings "any redundant, immaterial, impertinent, or scandalous matter." Although the decision to strike is in the discretion of the trial court, striking a party's pleadings is an extreme measure, which along with typically being a waste of the parties' time and the court's resources, is why motions to strike are viewed with disfavor and infrequently granted. *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 665 (7th Cir. 1992). In particular, the Seventh Circuit has cautioned that motions to strike extraneous matter are only to be granted if the complaint is actually prejudicial to the defendant. *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 821 (7th Cir. 2001)

("Fat in a complaint can be ignored." (internal quotations omitted)).

Here, paragraph 23 of the amended complaint states:

> Upon information and belief, JGS was used by Defendants Grant Gibbs and/or Rail Trust[s] as a sham to perpetrate a fraud upon Plaintiff by inducing Plaintiff into contracts where misrepresentations were made which were material, which caused Plaintiff to enter into the contract on the basis of the misrepresentation which caused damages to Plaintiff.

(Am. Compl. (dkt. #8) ¶ 23.)

The court agrees with defendants that this allegation does not appear to be material to any of plaintiff's claims, since plaintiff is not asserting a fraud claim against any of the defendants, nor any claim that would support piercing JGS's corporate veil. As such, the allegation is unnecessary, even if falling short of "scandalous." Regardless, as in *Davis*, it appears more "fat" that should be ignored, than good grounds for a motion to strike. That said, in drafting its second amended complaint, plaintiff should consider whether to clutter its pleading with this allegation, as it will likely be out after summary judgment at additional, needless expense of resources by the parties and the court.

ORDER

IT IS ORDERED that:

1) Defendants Grant Gibbs and Rail Trusts Equipment, Inc.'s respective motions to dismiss and strike (dkt. ##12, 13) are GRANTED IN PART AND DENIED IN PART as described above.

2) On or before Monday, July 15, 2019, plaintiff may file a second amended complaint revising its tortious interference claim consistent with this opinion and order. In filing this new pleading, plaintiff is not permitted to otherwise amend or expand its claims. Moreover, if amended, failure to timely amend shall result in loss of that claim with prejudice. Defendants Rail Trusts and Gibbs may have until Monday, August 5, 2019, to answer, move or otherwise respond.

Entered this 1st day of July, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge